IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KIOLBASSA PROVISION CO., INC., | § | |
| | § | |
| *Plaintiff,* | § | SA-20-CV-00507-FB |
| | § | |
| vs. | § | |
| | § | |
| TRAVELERS PROPERTY CASUALTY | § | |
| COMPANY OF AMERICA, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Travelers Property Casualty Company of America's Motion for Summary Judgment [#17]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#21], and the undersigned has authority to enter a recommendation as to Defendant's Motion for Summary Judgment pursuant to 28 U.S.C. § 636(b)(1)(B).

In reviewing Defendant's motion, the undersigned has considered Plaintiff's Response [#18], and Defendant's Reply [#20], as well as Defendant's Objections to Plaintiff's summary judgment evidence [#19], and the reply [#22] and response [#23] thereto. Having considered these written filings, the record in this case, and the governing law, the undersigned **recommends** that Defendant's Motion for Summary Judgment [#17] be **granted.**

## I. Background

The instant case involves an insurance contract dispute between the insured Plaintiff Kiolbassa Provision Company and the insurer Defendant Travelers Property Casualty Company

of America.  This case was removed from state court on April 24, 2020.  (Notice of Removal [#1].)  Plaintiff owns and operates a smoked meat business.  (Compl. [#1-6] ¶ 8.)  Plaintiff alleges that on August 7, 2019, Plaintiff placed 49,016 pounds of beef ("Product") in a refrigerated trailer, which the parties call a "reefer trailer," located at Plaintiff's business to be stored for later processing.  (Compl. [#1-6] ¶ 11; MSJ Resp. [#18], at 3.)  On or about August 10, 2019, Plaintiff removed the Product from the reefer trailer to discover that all of the Product had spoiled due to lack of refrigeration.  (Compl. [#1-6] ¶ 11.)  Plaintiff submitted a claim to Defendant under its policy for "Equipment Breakdown Protection" ("the Policy") for the full value of the spoiled Product, $167,135.52.  (*Id.* at ¶ 9, 12.)  Defendant denied coverage, claiming that the reefer trailer is a "vehicle," and the breakdown of a vehicle is not covered under the Policy.  (*Id.* ¶ 14.)

Plaintiff is suing Defendant for a variety of claims including breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and breach of the common law duty of good faith and fair dealing.  (Compl. [#1-6] ¶¶ 27–38.)  Defendant now moves for summary judgment in its favor on all of Plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such

2

that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Westphal*, 230 F.3d at 174.

### III. Summary Judgment Record

Construing the evidence most favorably to the non-movant Plaintiff, the summary judgment record establishes the following:

It is undisputed that Defendant issued a policy of insurance to Plaintiff which contained "EnergyMax 21 Equipment Breakdown Protection" form EBT1000808, effective September 9, 2018 to September 9, 2019.  (Policy [#17-1], at 4.)  The Policy provided coverage for direct damage caused by a "Covered Cause of Loss" to "Covered Property" located at the Covered

Premises.  (*Id*. at 20.)  A "Covered Cause of Loss" is a "Breakdown" to "Covered Equipment."  (*Id*.)   A "Breakdown" is defined as the following direct physical loss that causes physical damage to "Covered Equipment" and necessitates its repair or replacement: (1) electrical failure including arcing; (2) failure of pressure or vacuum equipment; or (3) mechanical failure including rupture or bursting caused by centrifugal force.  (*Id*. at 39.)  "Covered Equipment" means any electrical or mechanical equipment that is used in the generation, transmission, or utilization of energy.  (*Id.*) And the provision critical to resolving the summary-judgment motion states that **"Covered Equipment" does not mean any vehicle, aircraft, self-propelled equipment or floating vessel, including any "Covered Equipment" mounted on or used solely with any vehicle, aircraft, self-propelled equipment, or floating vessel.**  (*Id*. at 40.)  The Policy includes a Spoilage Damage Coverage Extension (SD) of up to $1,000,000.  (*Id*. at 13.)

Joshua Wenger, a risk consultant for Defendant, conducted the investigation into Plaintiff's insurance claim on August 27, 2019.  (Claim Investigation [#17-1], at 136.)  Wenger concluded that "the starter for the diesel generator that powers the refrigeration unit suffered a mechanical failure," and the "failure of the starter caused the refrigeration unit to stop cooling the trailer which caused the spoilage" of the Product.  (*Id*. at 139.)  On November 26, 2019, Defendant's claim professional Ron E. Gest sent a letter to Plaintiff's Vice President of Organizational Development and Finance Michael Johnson denying coverage under the Policy.  (Denial Letter [#17-1], at 140.)  Gest informed Johnson of Wenger's findings and stated that there was no coverage under the Policy because the "refrigerated trailer unit is considered a type of vehicle and is not considered to be covered equipment per the policy definition."  (*Id*. at 141.)  These records are authenticated by Michael Dotson, an Executive General Adjuster for

Defendant, who signed a sworn affidavit of authentication on February 24, 2021.  (Dotson Aff. [#17-1], at 132.)  Dotson is the custodian of claim records for Defendant for Claim no. FAC7658 (Plaintiff's claim).  (*Id.*)

On December 1, 2020, Plaintiff's Vice President Johnson was deposed.  (Johnson Depo. [#17-1], at 73.)  Johnson testified that the unit storing the Product was reefer trailer #41704, which was "used to store and attached to a tractor for cargo carriage."  (*Id.* at 80.)  Johnson testified that Plaintiff uses reefer trailers to deliver product to clients within Texas, to transport product from one facility to the other (a couple of blocks away), and for storage.  (*Id.*)  Johnson testified that using reefer trailers as storage is a "pretty common practice in the meat industry." (*Id.*)

Johnson also provided statements through a signed, sworn affidavit, dated March 12, 2021.  (Johnson Aff. [#18-1].)[1]  Johnson oversees accounting, IT, finance, human resources, and risk management for Plaintiff.  (*Id.* at 1.)  According to Johnson, during the time the Product was stored in the reefer trailer, the trailer "could not move on its own because it was not attached to a semi-truck and sat on fixed jack stands that rendered it immobile."  (*Id.* at 2.)  Johnson stated that "moving this trailer from place to place would otherwise require attaching it to a semi-truck and lifting or removing the jack stands."  (*Id.*)  Johnson also stated that Plaintiff "was not using the reefer trailer to transport anything during [the time the Product was stored]; instead, [Plaintiff] used the reefer trailer as a refrigerated storage unit to store the Product for several days."  (*Id.* at 2–3.)

---

[1] Defendant objects to this evidence arguing that it is not relevant, is conclusory, and that there is no foundation for its admission.  (Def. Objection [#19], at 2.)  This objection is overruled. Johnson executed his affidavit on behalf of Plaintiff.  (*Id.*)  Johnson is a custodian of records for Plaintiff and stated that he is familiar with the matters he described in his affidavit by virtue of his responsibilities.  (*Id.*)

The summary judgment record includes pictures of reefer trailer #41707.  (Photo. [#17-1], at 115, 117.)  The pictures show a long, white trailer with four wheels under the back of the reefer trailer, and metal jacks under the front-middle section of the reefer trailer.  A large refrigeration unit it attached to the reefer trailer.  The record also includes a registration renewal receipt for reefer trailer #41707 from the Texas Department of Motor Vehicles.  (Registration [#17-1], at 118.)  The receipt classifies it as a trailer.

Plaintiff's summary judgment evidence also includes excerpts from a deposition taken on January 22, 2021 of Michael Dotson, a representative of Defendant [#18-6]; Defendant's Claim File Notes [#18-7]; and an email exchange between Defendant's employees Ron Gest and Kevin Locklin on August 22, 2021 [#18-8].  Of this evidence, the item most relevant to the resolution of Defendant's summary judgment motion is the email exchange between Gest and Locklin, wherein Locklin tells Gest that if the reefer trailer is "indeed a trailer that is still on wheels and not permanently wired, it would be a vehicle and would not be Covered Equipment."  (Def. Email [#18-8], at 2.)

Finally, Plaintiff also submitted evidence concerning a separate insurance policy, called the cargo policy,[2] issued to Plaintiff by Travelers Lloyds Insurance Company, a different insurer than Defendant.  (Cargo Policy [#18-2]); Cargo Policy Letter [#18-3]; Cargo Policy Email [#18-4].)  Plaintiff also submitted a claim under this policy, but it was rejected because the property was not in transit and therefore not cargo at the time of the loss.  (Pl. Resp. [#18], at 5.)

---

[2] Defendant objects to this evidence, arguing that it is irrelevant.  The undersigned need not consider the objection, because as is explained in the analysis below, the cargo insurance policy has no bearing on the interpretation of the Policy at issue in this case.

## IV. Analysis

In this lawsuit, Plaintiff asserts that Defendant's denial of coverage for the spoiled Product is a breach of contract, a violation of Chapters 541 and 542 of the Texas Insurance Code, a violation of the Texas Deceptive Trade Practices Act, and a breach of the common law duty of good faith and fair dealing.  Defendant argues that it is entitled to summary judgment on the breach of contract claim because the Product spoiled due to a breakdown of the reefer trailer, which is a vehicle and is not covered by the Policy, and Plaintiff's failure to prove breach is fatal to its extracontractual claims as well.  Plaintiff responds that the reefer trailer is not a vehicle and therefore the spoilage is covered by the Policy.  In the alternative, Plaintiff argues that the term "vehicle" is ambiguous and summary judgment cannot be granted for Defendant.

### A.  Plaintiff waived its ambiguity argument; "vehicle" must be construed by the Court.

Each party contends that its respective construction of "vehicle" is correct as a matter of law.  Although Plaintiff also argues in the alternative that the term is ambiguous, Plaintiff failed to affirmatively plead ambiguity in this lawsuit; thus, this argument is waived.  *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (Under Texas law, "a person who wishes to argue contract ambiguity must affirmatively plead it, or else the argument is waived.").  Accordingly, the contract must be construed as a matter of law.  *See 54 Broad., Inc. v. Lin Television of Texas, L.P.*, A-08-CA-030-SS, 2008 WL 7836303, at *3 (W.D. Tex. 2008).  Therefore, the issue before the Court is whether the reefer trailer is a "vehicle" under the Policy.

### B.  Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

Defendant contends it is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff cannot demonstrate that the Policy covers Plaintiff's loss.   The undersigned agrees.

In a dispute over insurance coverage, the insured initially has the burden of establishing coverage under the insurance policy. *Seger v. Yorkshire Ins. Co*., 503 S.W.3d 388, 400 (Tex. 2016). To prove coverage under the policy, the insured must establish that (1) the injury or damage is the type covered by the policy; (2) the injury or damage was incurred at the time covered by the policy; and (3) the injury or damage was incurred by a person whose injuries are covered by the policy. *Id.* If the insured establishes coverage, the insurer then has the burden to plead and prove that the loss falls within exclusions to the policy's coverage. *Id*. at 400–01.

Plaintiff argues that the Policy's provision indicating that vehicles do not qualify as "Covered Equipment" is an exclusion, and therefore it is Defendant's burden to prove that the reefer trailer is a vehicle and so it is excluded from coverage. The undersigned disagrees that this is an exclusion that would shift Plaintiff's burden. In the Policy, the provision that defines the type of equipment that is covered and the type that is not is not in the Exclusions section, but in the Definitions section, specifically in the definition of "Covered Equipment." (Policy [#17-1], at 39–40.) In articulating the definition of "Covered Equipment," the Policy sets forth what the term does and does not include, and says specifically that "'Covered Equipment' does not mean any . . . vehicle." Therefore, it is the burden of Plaintiff, as the insured, to prove the loss is covered, and specifically, that the reefer trailer is "Covered Equipment" because it is not a "vehicle."

Language in a policy that can be given a definite or certain legal meaning is unambiguous. *See Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 134 (Tex. 2010). Insurance policies are written contracts and are interpreted using the same rules that apply to all contracts. *Nassar v. Liberty Mutual Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017); *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). In

interpreting an insurance policy, the court is to give effect to the written expression of the parties' intent. *See State Farm Lloyds v. Pages*, 315 S.W.3d 525, 527 (Tex. 2019).  All parts of the policy must be read together, and meaning must be given to every sentence, clause, and word to avoid rendering any part of the policy nonoperative. *Nassar*, 508 S.W.3d at 258; *Page*, 315, S.W.3d at 527; *see also In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015) (holding that the court must look to extrinsic documents to determine scope of coverage only to extent required by the policy).  Unless the policy dictates otherwise, courts must give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *RSUI Indem. Co*., 466 S.W.3d at 118.  Where the policy does not define a term, Texas courts typically first look to dictionary definitions and then consider the term's usage in legal precedent. *Anadarko Petroleum Corp. v. Houston Cas. Co*., 573 S.W.3d 1187, 1192 (Tex. 2019); *see, e.g., Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 159 (Tex. 2003).  Importantly, Texas courts do not "simply stop at dictionary definitions, context matters." *Anadarko*, 573 S.W.3d at 1193.  The courts are not to isolate any word, phrase, sentence, or section from its setting and construe it without considering its context. *Id.* (citing *Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132, 124 (Tex. 1994)).

The Policy says that "Covered Equipment" does not mean any vehicle, aircraft, self-propelled equipment or floating vessel, including any "Covered Equipment" mounted on or used solely with any vehicle, aircraft, self-propelled equipment, or floating vessel.  (Policy [#17-1], at 40.)  "Vehicle" is not defined in the Policy.  Black's Law Dictionary defines vehicle as (1) "[a]n instrument of transportation or conveyance," and (2) "[a]ny conveyance used in transporting passengers or things by land, water, or air." *Vehicle*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Merriam Webster defines vehicle as "a means of carrying or transporting something" and

9

"an agent of transmission." *Vehicle*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/vehicle (last visited August 23, 2021).

The trailer squarely falls within these dictionary definitions. The reefer trailer is indeed an instrument of transportation used to carry something, even though it was not being used as such an instrument while storing the Product. Plaintiff's Vice President Johnson admitted that Plaintiff's reefer trailers are semitrailers and are not used solely for storage, but are also used to deliver products to clients or to move products to other facilities. (Johnson Depo. [#17-1], at 80.) Further, the reefer trailer was assigned a *vehicle* identification number by the Texas Department of Transportation. (Registration [#17-1], at 118.) In fact, the Texas Transportation Code defines semitrailer as "a ***vehicle*** without motive power that is designed, or used with a motor vehicle, so that some of its weight and the weight of its load rests on or is carried by the motor vehicle." Tex. Trans. Code § 621.006 (emphasis added). In the Code, vehicle includes "a motor vehicle, commercial motor vehicle, truck-tractor, trailer, or semitrailer[.]" *Id.* at § 621.009. These statutory definitions further bolster the conclusion that the plain meaning of vehicle to the parties, who are governed by these statutes, would include a semitrailer.

Construing the term "vehicle" to include the reefer trailer is also consistent with how other courts have construed the plain meaning of "vehicle" in similar contexts. *See Anadarko*, 573 S.W.3d at 1192 ("To determine a [policy] term's common, ordinary meaning, we typically look first to the dictionary definitions and then consider the term's usage in other authorities."). For instance, in *Green*, the Fifth Circuit also construed the term "vehicle" in an insurance policy. *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324 (5th Cir. 2014). Although in *Green* the Fifth Circuit was applying federal common law and not Texas law in construing the term "vehicle," its analysis is still instructive in terms of the plain language construction the court employed. In

*Green*, the parties contested whether the policy term, "any type of vehicle," included a boat.  *Id.* at 332.  The plaintiff argued that the word "vehicle" meant only a device that can be transported on a highway, but the Fifth Circuit rejected this narrow definition and refused to infer limiting language not included in the policy.  *Id.*  The Fifth Circuit held that the plain meaning of vehicle as used in the policy is unambiguous and broad enough to encompass a boat, citing dictionary definitions of vehicle, including *Black's Law Dictionary* definition of vehicle as "an instrument of transportation or conveyance" or "any conveyance used in transporting passengers or things by land, water, or air."  *Id.*  The Fifth Circuit easily concluded that a boat would qualify as an instrument of transportation or conveyance.  Likewise, so does a semitrailer.

Plaintiff argues that implicit in the term "vehicle" is the requirement that the equipment be capable of self-propulsion.  But that argument is inconsistent with the dictionary and statutory definitions, as discussed above, and requires the Court to infer limiting language that is not in the Policy.  And Plaintiff's proposed construction also does not make sense when the term vehicle is read in the context of the Policy provision, which says "'Covered Equipment' does not mean any . . . [v]ehicle, aircraft, or self-propelled equipment or floating vessel."  If the term vehicle only encompassed devices capable of self-propulsion, "self-propelled equipment" is arguably a redundant addition to the list of what does not qualify as covered equipment.  Simply put, "vehicle" is not limited in any way in this list, in contrast to "vessel" and "equipment," which both have modifiers.

Plaintiff also argues that the term "vehicle" should be construed so as to harmonize it with the provisions of other Travelers policies, including the cargo policy, which was issued to Plaintiff by a different Travelers entity.  But the terms of a separate policy issued by a different

entity for a different purpose has no bearing on the interpretation of the insurance Policy at issue in this case.

In sum, the plain meaning of the Policy's term "vehicle" includes the reefer trailer, which is therefore not included in the definition of "Covered Equipment."  Therefore, Defendant's denial of coverage for the spoiled Product due to the reefer trailer breakdown was proper, and the undersigned recommends that Defendant be granted summary judgment on Plaintiff's breach of contract claim.

**B.    Defendant is entitled to summary judgment on Plaintiff's extra-contractual claims.**

Defendant also asks for summary judgment on the remainder of Plaintiff's claims, including: unfair insurance practices under Texas Insurance Code Chapter 541; failure to timely investigate, provide notice, and timely pay under Texas Insurance Code Chapter 542; misrepresentation and unconscionable acts under Texas Deceptive Trade Practices Act ("DTPA"); and breach of the common law duty of good faith and fair dealing.

An insured cannot recover any damages based on an insurer's statutory violations unless the insured establishes: (1) a right to receive benefits under the policy; (2) an injury independent of a right to benefits; or (3) that the insurer's conduct caused the insured to lose a contractual right to benefits.  *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 497, 501 (Tex. 2018) (citing *Provident Am. Ins. Co. v. Casteneda*, 988 S.W.2d 189, 198 (Tex. 1998)).  Here, the Plaintiff has failed to establish a right to receive benefits for the spoiled Product under the Policy.  As Plaintiff's only requested relief is for damages related to contract breach, Plaintiff has not shown that it suffered an injury independent of the right to benefits.  Lastly, the Plaintiff has failed to provide evidence that Defendant's conduct caused Plaintiff to lose a contractual right to

benefits.  Therefore, the undersigned recommends that Defendant be granted summary judgment on Plaintiff's Texas Insurance Code and DTPA claims.

Plaintiff also failed to show that Defendant is liable for breach of the common law duty of good faith and fair dealing.  The common law duty of good faith is separate and distinct from the insurer's settlement duties involving good faith that arise under the Texas Insurance Code. *See Lane v. State Farm Mut. Auto. Ins.*, 992 S.W.2d 545, 553–54 (Tex. App.—Texarkana 1999, pet. denied).

In most circumstances, it is very difficult for a plaintiff to prevail on a bad faith claim without first proving that the insurer breached the contract.  *See Menchaca*, 545 S.W.3d at 499–500.  The plaintiff must prove that the insurer breached its duty by: (1) denying or delaying payment when liability was reasonably clear; or (2) canceling an insurance policy without a reasonable basis.  *See Union Bankers Ins. v. Shelton*, 889 S.W.2d 278, 283 (Tex. 1994).  The plaintiff must further show that this breach proximately caused the plaintiff's damages.  *See Chitsey v. Nat'l Lloyds Ins.*, 738 S.W.2d 641, 643 (Tex. 1987).  Plaintiff argues that Defendant committed bad faith for denying payment, and must therefore show that Defendant's liability under the Policy "was reasonably clear."  *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997).  As the undersigned has found that Defendant properly denied Plaintiff's claim, Plaintiff has failed to show that liability was reasonably clear.  Defendant's denial of Plaintiff's claim, therefore, was not done in bad faith.  The undersigned recommends that Defendant be granted summary judgment on Plaintiff's claim for breach of the common law duty of good faith and fair dealing.

## V.  Conclusion and Recommendation

Having considered Defendants' motion, the response and reply thereto, the evidence before the Court, and governing law, the undersigned hereby **recommends** that Defendant Travelers Property Casualty Company of America's Motion for Summary Judgment [#17] be **GRANTED.**

## VI.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 24th day of August, 2021.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE